# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 7, 2006        Decided August 7, 2007

No. 05-3093

UNITED STATES OF AMERICA,
APPELLEE

v.

RANDOLPH BOWMAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00060-01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, *Lisa H. Schertler*, and *T. Anthony Quinn*, Assistant U.S. Attorneys.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Police officers arrested Randolph Bowman at a license-and-registration roadblock after discovering a loaded gun and twenty bags of crack cocaine on his person.  The government subsequently filed a criminal complaint charging Bowman with violations of the firearms and narcotics laws, but failed to indict him within thirty days as required by the Speedy Trial Act.  A magistrate judge dismissed the complaint with prejudice, and thereafter a grand jury issued an indictment charging Bowman with gun and drug crimes.

After the case was assigned to a federal district judge, Bowman moved to dismiss the indictment on the ground that the magistrate had previously dismissed the complaint with prejudice.  He also moved to suppress the gun and drugs on Fourth Amendment grounds.  The district court denied both motions; Bowman then entered a conditional plea of guilty, and he now appeals.  We affirm the district court's determination that the magistrate improperly dismissed the complaint with prejudice, and therefore also affirm the court's denial of Bowman's motion to dismiss the indictment.  But because there are neither findings nor evidence sufficient to assess the constitutionality of the roadblock, we remand the case to the district court for an evidentiary hearing in accordance with our decision in *United States v. Davis*, 270 F.3d 977 (D.C. Cir. 2001).

I

On January 3, 2004, Officer John Bevilacqua of the Metropolitan Police Department (MPD) stopped Bowman's red Chevrolet Nova at a police roadblock at the intersection of Stanton Road and Bruce Place in southeast Washington, D.C.  According to Bevilacqua's later testimony, police set up the

roadblock to check driver's licenses and vehicle registrations. The roadblock was marked by uniformed officers waving flashlights and police cars with flashing overhead lights. It was manned by approximately sixteen officers, stopped fifty to sixty cars that night, and had been in operation for more than an hour when officers stopped Bowman's Nova.

As Bevilacqua approached the car, he noticed a 12-ounce cup of "foamy," "amber" liquid in Bowman's lap. When the officer asked Bowman for his license and registration, Bowman attempted to conceal the cup and intentionally spilled out some of the liquid. Believing that the cup contained beer, Bevilacqua asked Bowman to get out of the car and to put his hands on the roof.

To ensure that Bowman did not have a weapon, Bevilacqua attempted to pat down Bowman's midsection. As Bevilacqua began the pat-down, Bowman brought his elbows down and moved his hands in toward the center of his body. Bevilacqua grabbed Bowman by the wrists, placed his hands back on top of the car, and told him to leave them there. The officer again attempted to pat down Bowman's midsection, and Bowman again brought his hands down, moving them toward his waist. A struggle ensued, and both men ended up on the ground. As they struggled, Bowman's sweater came up in the front, revealing a handgun in his waistband. Bowman was eventually restrained and searched. In addition to the gun, the police found a clear ziplock bag containing twenty smaller bags of crack cocaine.

On January 5, 2004, two days after the arrest, the government filed a criminal complaint, charging Bowman with possession with intent to distribute cocaine base and possession of a firearm and ammunition by a convicted felon. On February 6, Bowman's appointed counsel filed a motion to dismiss the

complaint with prejudice, on the ground that the government had failed to file an indictment within thirty days of the arrest, as required by the Speedy Trial Act, 18 U.S.C. §§ 3161(b), 3162(a)(1). A magistrate judge signed the order that day.

On February 10, unaware that the magistrate had dismissed the complaint with prejudice, the government obtained an indictment from the grand jury. The indictment charged Bowman with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). At a status conference held by a district court judge on February 27, Bowman's newly retained trial counsel, likewise unaware of the dismissal with prejudice, orally moved to dismiss the indictment on the ground that Bowman had not been indicted within thirty days of his arrest. On March 16, the government informed the district court that the magistrate had dismissed the complaint with prejudice, and the court directed the parties to brief the effect of the dismissal.

At a motions hearing on March 19, Bowman argued that the dismissal of the original complaint with prejudice barred further prosecution, and that, as a result, the court should dismiss the indictment. On March 31, the district court denied the motion on two grounds, holding that: (1) under the relevant provision of the Federal Magistrate's Act, 28 U.S.C. § 636(b)(1)(A), the magistrate judge did not have authority to dismiss the complaint *with* prejudice; and (2) even if the magistrate did have that authority, the dismissal order was erroneous as a matter of law because it should have been made *without* prejudice. *See United States v. Bowman*, No. 04-060, Mem. Op. at 4-10 (D.D.C. Mar. 31, 2004).

Bowman subsequently moved to suppress the gun and narcotics, arguing that they were obtained in violation of the Fourth Amendment. The district court denied this motion as well, finding that the roadblock was conducted for a legitimate purpose and that Bevilacqua had a reasonable basis for detaining Bowman and conducting a limited pat-down.

On January 31, 2005, after losing his motion to suppress, Bowman entered a conditional plea of guilty to one count of possession of a firearm by a convicted felon. Bowman's plea reserved the right to appeal the denial of his motions to dismiss the indictment and to suppress evidence.

## II

We begin with Bowman's challenge to the district court's denial of his motion to dismiss the indictment.

The Speedy Trial Act provides that an indictment must be filed "within thirty days from the date on which [an] individual was arrested." 18 U.S.C. § 3161(b). If no indictment is filed within that time limit, the charges contained in the complaint "shall be dismissed." *Id*. § 3162(a)(1). The court may dismiss the complaint with or without prejudice. *See id.* Although the Act "clearly allows reprosecution after dismissal without prejudice for violations of the Act," prosecution on the same charge is barred after dismissal with prejudice. *United States v. Bittle*, 699 F.2d 1201, 1206 (D.C. Cir. 1983); *see White v. United States*, 377 F.2d 948, 949 (D.C. Cir. 1967). In this case, the magistrate dismissed the complaint with prejudice.

As noted above, the district court denied Bowman's motion to dismiss the indictment for two reasons. First, citing a provision of the Federal Magistrate's Act concerning the powers of magistrate judges, the court held that the magistrate lacked

authority to dismiss a felony complaint with prejudice. *See* Mem. Op. at 4-6; *see also* 28 U.S.C. § 636(b)(1)(A) ("Notwithstanding any provision of law to the contrary[,] . . . a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or quash an indictment or information made by the defendant, . . . and [a motion] to involuntarily dismiss an action."). "Because the [magistrate's] order purported to dismiss the criminal complaint against the defendant with prejudice," the court held, "it was outside the authority of the magistrate judge and was legally invalid." Mem. Op. at 7.

Bowman vigorously disputes the district court's holding that magistrate judges lack the power to dismiss felony complaints with prejudice. In support, he cites the Speedy Trial Act, which permits a "court" to dismiss a complaint with or without prejudice. 18 U.S.C. § 3162(a)(1). The Act does not define the term "court," although it does define "judge" as "any United States magistrate [or] Federal district judge." *Id*. § 3172(1). Bowman also cites Federal Rule of Criminal Procedure 48(b), which permits a "court" to dismiss a complaint if "unnecessary delay occurs in . . . presenting a charge to a grand jury." FED. R. CRIM. P. 48(b). The Federal Rules define "court" as "a federal judge performing functions authorized by law," and define "federal judge" to include a magistrate judge. FED. R. CRIM. P. 1(b)(2), (3).

We need not resolve the underlying authority of the magistrate judge in order to decide this case, because we agree with the district court's second reason for denying the motion to dismiss the indictment. "Even had the magistrate judge the legal authority to dismiss the complaint with prejudice, the dismissal order here cannot be sustained." Mem. Op. at 7.

The Speedy Trial Act instructs as follows: "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1); *see id*. § 3162(a)(2). In *United States v. Taylor*, the Supreme Court held that it "is plain from this language [that district] courts are not free simply to exercise their equitable powers in fashioning an appropriate remedy, but, in order to proceed under the Act, must consider at least the three specified factors." 487 U.S. 326, 333 (1988). Moreover, "the administration of the Speedy Trial Act and the necessity for thorough appellate review require that a district court *carefully express its decision* whether or not to bar reprosecution in terms of the guidelines specified by Congress." *Id*. at 343 (emphasis added). A court's failure to "explain" how it applied those factors constitutes an abuse of discretion. *Id*.

There is no real dispute that the magistrate failed to comply with *Taylor*'s requirement that he "carefully express" and "explain" his decision in terms of the congressionally mandated factors. The magistrate signed the appellant's proposed order to dismiss with prejudice on the day it was filed, without informing the prosecutor, holding a hearing, or explaining his reasoning. The district court was clearly correct in concluding that, "[u]nder *United States v. Taylor*, such a bare dismissal was an abuse of discretion and must be reversed." Mem. Op. at 8.

Having reversed the magistrate's order, the district court proceeded as if there had been no prior determination as to whether the dismissal was with or without prejudice. In *United States v. Bittle*, we held that, "[w]hen a complaint is dismissed after the thirty-day period for indictment [under the Speedy Trial Act] has elapsed, and there is no determination whether the

dismissal is with or without prejudice, a subsequently filed indictment should be dismissed only if the complaint should have been dismissed with prejudice." 699 F.2d at 1207. For the following reasons, the court concluded that the complaint should have been dismissed *without* prejudice:

> The offenses charged are quite serious and suggest that the defendant may have a significant role in the plague of guns and drugs that daily injures the people of Washington, D.C. The circumstances that led to the dismissal do not indicate any bad faith or lack of attention by the United States; an indictment was promptly obtained four days later. It also appears probable that the magistrate judge inadvertently dismissed the complaint with prejudice, believing that the [prosecutor] concurred with the proposed order. Reprosecution would not offend the Speedy Trial Act because the time delay was minimal and no prejudice to the defendant has occurred. On the other hand, the administration of justice would be negatively impacted were reprosecution prohibited. The community is entitled to a resolution of the charges against the defendant and, if the charges are proved to a jury's satisfaction beyond a reasonable doubt, to protection from him.

Mem. Op. at 9 (footnote omitted). In light of these considerations, we have no doubt that "the district court properly exercised its discretion in determining that the complaint should have been dismissed without prejudice." *Bittle*, 699 F.2d at 1202.

Bowman next contends that, regardless of whether the magistrate judge erred in dismissing the complaint with prejudice, the district judge was without authority to reverse that

9

order. Bowman argues, first, that only the chief judge of the district court had the power to overturn the magistrate judge's decision to dismiss the complaint. In support, he turns to Local Rule 57.14(7), which states that the chief judge "shall . . . hear and determine requests for review of rulings by magistrate judges in criminal cases not already assigned to a judge of the Court," D.D.C. CRIM. R. 57.14(7), and to Local Rule 57.10(a)(2), which states that a criminal case is not assigned to a district court judge until an indictment or information is filed, *see id.* at 57.10(a)(2). We have never held that a violation of this kind of local court rule can invalidate an indictment. *Cf. United States v. Osum*, 943 F.2d 1394, 1401 n.3 (5th Cir. 1991) ("It is generally stated that local rules governing the assignment of cases are intended to promote efficient operation of the district courts and do not normally give defendants vested rights to any particular procedure."); *United States v. Berberian*, 851 F.2d 236, 240 (9th Cir. 1988) (same); *Sinito v. United States*, 750 F.2d 512, 515-16 (6th Cir. 1984) (same). And in any event, by its own terms, Local Rule 57.14(7) does not apply once a defendant has been indicted and the case assigned to a district judge, as was true here. At the time the district judge reviewed the magistrate judge's order, the case had been "assigned to" that district judge. D.D.C. CRIM. R. 57.14(7).

Relatedly, Bowman argues that the government sought district court relief too late -- that it should have appealed within ten days of the magistrate's order, at which time (pre-indictment) an appeal could only have gone to the chief judge. In support of this argument, Bowman points to Federal Rule of Criminal Procedure 58(g)(2)(A), which states that "[e]ither party may appeal an order of a magistrate judge to a district judge within 10 days of its entry if a district judge's order could similarly be appealed." FED. R. CRIM. P. 58(g)(2)(A). The problem with this argument is that Rule 58, which is entitled "Petty Offenses and Other Misdemeanors," applies only "in

petty offense and other misdemeanor cases and on appeal to a district judge in a case tried by a magistrate judge." FED. R. CRIM. P. 58(a). The magistrate's dismissal of a felony complaint does not fit within any of these categories. *See* 3B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 913 (3d ed. 2007). And the defendant cites no other rule or statute limiting the time period for seeking review of a magistrate's dismissal of a criminal complaint.[1]

In sum, even if the magistrate judge had authority to dismiss the criminal complaint with prejudice, nothing barred the district court from reviewing that dismissal. Concluding that the district court properly determined that the complaint should have been dismissed without prejudice, we affirm its denial of Bowman's motion to dismiss the subsequent indictment. *See Bittle*, 699 F.2d at 1202.

## III

We next consider Bowman's challenge to the district court's denial of his motion to suppress evidence. In denying that motion, the court made two determinations. First, the court held that the stop of Bowman at the roadblock was

---

[1]Federal Rule of Criminal Procedure 59(b) provides that, "[w]ithin 10 days after being served with a copy of [a magistrate's] recommended disposition, or at some other time the court sets, a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CRIM. P. 59(b)(2). The Rule applies to a magistrate's "recommendation" regarding certain kinds of dispositive matters "refer[red] to" the magistrate by a district judge. FED. R. CRIM. P. 59(b)(1). Although the parties debate whether the rule would apply to a case like this, they agree that it does not apply to *this* case because it did not go into effect until December 1, 2005 -- well after the magistrate dismissed the complaint against Bowman. *See* FED. R. CRIM. P. 59.

constitutional, finding that "there's no evidence to counter the government's evidence that the primary purpose of this particular checkpoint was to check for licenses and registration," Hr'g Tr. 47 (May 20, 2004), and that "the way the checkpoint was conducted resulted in minimal intrusion for citizens," *id.* at 46. Second, the court held that, following the roadblock stop, Bevilacqua had a reasonable basis under *Terry v. Ohio*, 392 U.S. 1 (1968), to detain Bowman and to conduct a limited pat-down of his torso. Hr'g Tr. 49-50. Bowman challenges both determinations. Because we conclude that a remand is required to assess the constitutionality of the stop at the roadblock, we do not reach Bowman's second challenge.

A

"A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). As noted in *Edmond*, however, the Supreme Court has recognized "limited circumstances in which the usual rule does not apply." *Id.* With respect to roadblocks, the Court has "upheld brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens, and at a sobriety checkpoint aimed at removing drunk drivers from the road." *Id.* (citations omitted); *see Michigan Dep't. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543, 566-67 (1976). "In addition," the Court has "suggested that a similar type of roadblock with the purpose of verifying drivers' licenses and vehicle registrations would be permissible." *Edmond*, 531 U.S. at 37-38 (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)); *see also Texas v. Brown*, 460 U.S. 730, 739 (1983). Taking the Court's suggestion, this circuit has twice held that a roadblock is constitutionally permissible where its principal purpose is "'to regulate vehicular traffic by allowing police to check driver'[s] licenses and

vehicle registrations.'" *Davis*, 270 F.3d at 980 (quoting *United States v. McFayden*, 865 F.2d 1306, 1312 (D.C. Cir. 1989)). Where, however, "the 'primary purpose' of a roadblock is general crime control" or the "'interdiction of illegal narcotics'" -- as in *Edmond* -- "it is unconstitutional." *Id.* at 979 (quoting *Edmond*, 531 U.S. at 38, 41, 42, 44, 46, 47, 48).

In *United States v. McFayden*, we held that three factors must be present for license-and-registration checkpoints to pass constitutional scrutiny. First, the principal purpose of such checkpoints must be vehicular regulation. *See* 865 F.2d at 1311-12. Second, "the checkpoints must serve to promote that purpose in a 'sufficiently productive' fashion." *Id.* (quoting *Prouse*, 440 U.S. at 659). Third, "the checkpoints must be minimally intrusive: (1) they must be clearly visible; (2) they must be part of some systematic procedure that strictly limits the discretionary authority of police officers; and (3) they must detain drivers no longer than is reasonably necessary to accomplish the purpose of checking a license and registration, unless other facts come to light creating a reasonable suspicion of criminal activity." *Id.* at 1312 (citing *Prouse*, 440 U.S. at 662; *Martinez-Fuerte*, 428 U.S. at 558-59; *Brown v. Texas*, 443 U.S. 47, 51 (1979)).

We found all three factors satisfied by the roadblock at issue in *McFayden*. In that case, officers discovered narcotics in a car that they stopped at a checkpoint established as part of the MPD's "Operation Cleansweep." First, although Operation Cleansweep attacked the problem of drug dealing in the District, the testimony of the Deputy and Assistant Chiefs of Police and of the Operation's supervisors persuaded the court that the roadblocks themselves were set up to control traffic congestion. "The evidence in this case amply demonstrates," we said, "that the principal purpose of the roadblock was to regulate vehicular traffic. . . . The fact that there may have been a 'halo' or 'spin-

off' effect of deterring drug sellers and buyers . . . did not make an otherwise legitimate checkpoint unlawful." *Id.* Second, citing data reflecting the number of traffic arrests at the checkpoints, we concluded that the evidence established "the effectiveness of the roadblocks for the stated purpose." *Id.* at 1313. Finally, we found "that the operation of the roadblock observed the Fourth Amendment standard of minimal interference with individual liberty." *Id.* The roadblocks were clearly marked by flares and uniformed police officers, *see id.*; "field officers were specifically instructed to check licenses and registrations of all the cars" and hence did not have "'standardless and unconstrained discretion,'" *id.* (quoting *Prouse*, 440 U.S. at 661); and the drivers were not detained once they produced valid documents, unless other facts created reasonable suspicion of criminal activity, *see id.*

Like *McFayden*, *United States v. Davis* involved the discovery of narcotics during a stop at a traffic roadblock. Unlike *McFayden*, however, in *Davis* we concluded that the findings and evidence in support of the roadblock's constitutionality were insufficient in two respects.

First, the district court's finding that the roadblock was conducted for the principal purpose of vehicular traffic regulation rested "on the testimony of the government's sole witness," a police sergeant who was in charge of the specific roadblock at issue. *Davis*, 270 F.3d at 981. The officer had testified that he "chose the neighborhood for a 'safety compliance check,'" that he "briefed the other officers 'on safety concerns,'" that he "gave no instructions 'about looking for narcotics or firearms,' and [that] he was not aware that any of the officers at the scene were instructed about matters 'unrelated to vehicle safety.'" *Id.* But the specific roadblock that stopped defendant Davis had been set up as part of the MPD's "Summer Mobile Force," and "[a]ccording to a police manual, the

14

Summer Mobile Force initiative had as its overall objective 'to restore the public's confidence in the [MPD] through the reduction and prevention of crime and violence by utilizing short-term, pro-active, high visibility enforcement techniques.'" *Id.* Yet, in "determining the principal purpose of the safety checkpoint . . . , the district court made no findings about the Summer Mobile Force." *Id.* This was an important defect, we said, because "*Edmond* held that 'programmatic purposes may be relevant to the validity of Fourth Amendment intrusions undertaken pursuant to a general scheme without individualized suspicion.'" *Id.* (quoting *Edmond*, 531 U.S. at 45-46). "Since the district court . . . [did] not appear to have taken these 'programmatic purposes' into account," we concluded that "we must send the case back for further proceedings." *Id.* at 981.

Second, we found the district court's determination deficient with respect to *McFayden*'s requirement that a checkpoint "'promote the state interest in a "sufficiently productive" fashion.'" *Id.* at 982 (quoting *McFayden*, 865 F.2d at 1311-12 (quoting *Prouse*, 440 U.S. at 660)). Although we noted that "[t]he effectiveness" or expected effectiveness "of the checkpoint in fulfilling its primary purpose may be demonstrated" in a variety of ways (including but not limited to statistical evidence), the *Davis* record contained no evidence regarding efficacy at all. *Id.* Accordingly, we directed that, "if the district court concludes on remand that the primary purpose of the checkpoint related to vehicular regulation," then it should go on to determine "whether the checkpoint furthered that purpose." *Id.* at 983.

B

This case is governed by our disposition in *Davis*. First, as in *Davis*, the sole evidence to support the district court's finding that the principal purpose of the roadblock was to check for

licenses and registrations was testimony to that effect by a single field officer, Officer Bevilacqua.  Also as in *Davis*, the testimony established that this particular roadblock was part of a larger program.  Bevilacqua testified that he was a member of a task force, the "Seventh District High Impact Tactical Team." The Team conducted between forty and fifty roadblocks that year, including the one that stopped Bowman.  *See* Hr'g Tr. 11. And while Bevilacqua testified that the instant roadblock was conducted for license-and-registration compliance, he acknowledged that the Team's "general[]" responsibilities were "combatting crime in the Seventh District[,] . . . [p]rimarily the retrieval of narcotic[s] and guns from the streets.  *Id*. at 10.  Yet, as in *Davis*, the district court does not appear to have taken these responsibilities into account in concluding that there was "*no* evidence to counter the government's" description of the roadblock's primary purpose.  *Id*. at 47 (emphasis added). Moreover, again as in *Davis*, there was no evidence, and the court made no findings, about the programmatic purpose behind the series of roadblocks of which this one was only a part.  *See* Hr'g Tr. at 47 (finding the principal purpose "of this particular checkpoint"); *cf. McFayden*, 865 F.2d at 1312-13 (upholding a roadblock where the Deputy and Assistant Chiefs of Police, and the supervisors of the overall operation, testified that the purpose of the roadblock program was traffic control).

Indeed, if anything, the evidence of purpose here was weaker than that found insufficient in *Davis*.  In *Davis*, the testifying officer was the sergeant in charge of the roadblock that stopped the defendant.  He testified about his reasons for selecting the site, including traffic complaints from community members and incidents of criminal activity, and also testified as to the instructions he issued to the officers conducting the roadblock.  *See* 270 F.3d at 981.  In this case, by contrast, the testifying officer was merely one member of a team of approximately sixteen officers who conducted the roadblock.

As the district court noted, Bevilacqua's testimony was simply "that the officers were directed that the purpose of the checkpoint was to check for licenses." Hr'g Tr. 45. When asked whether checking driver's licenses was the only purpose, he could only say that "[t]hat's what I was directed by my official." And regarding the programmatic purpose of the forty to fifty roadblocks that his team had conducted over the course of the year, all he could say was: "Upon occasion we were directed, and I don't know how high, I can only tell you what my officials tell me, that we are to be looking for driver's license[s] in a traffic safety checkpoint." *Id*. at 24.

Second, as in *Davis*, the district court made no finding that either the roadblock, or the program as a whole, was an effective means of furthering the purpose of vehicular regulation. Nor was there any evidence that would have permitted the court to make such a finding. *Cf. Sitz*, 496 U.S. at 454-55 (upholding a sobriety checkpoint where the record demonstrated the effectiveness of the checkpoint in yielding drunk-driving arrests).

Third, there remains the question of whether the checkpoint was "minimally intrusive." *McFayden*, 865 F.2d at 1312. We did not expressly address this factor in *Davis*, although we did note that the checkpoint there was lined by safety flares and marked police cars, and that all vehicles approaching the roadblock were stopped. *See* 270 F.3d at 978-79. Based on Bevilacqua's testimony, the district court found similar facts to be true here as well: the roadblock was clearly visible, "every car was stopped[,] . . . [a]nd . . . there was no discretion among the officers as to whether to stop the cars." Hr'g Tr. 45. The court also found that drivers who had licenses and registrations were immediately released from the checkpoint. *See id*.

Bowman does not dispute these findings, but notes that the court made no findings as to "whether [the officers] had discretion in the choice of location and time" for the roadblock, Appellant's Br. 22, and whether they conducted the roadblock pursuant to a "set of guidelines" or "standards," *id.* at 21. Although these considerations are relevant to ensuring against the kind of random, roving stops disapproved in *Delaware v. Prouse*, 440 U.S. at 656-58, they are of less relevance with respect to a roadblock that lasted more than an hour, that stopped fifty to sixty cars, and at which the officers were instructed "that *every* car was to be stopped," Hr'g Tr. 16 (emphasis added). These circumstances may themselves constitute a "systematic procedure that strictly limits the discretionary authority of police officers." *McFayden*, 865 F.2d at 1312; *cf. Prouse*, 440 U.S. at 659, 663 (holding that a standardless, "discretionary spot check" to examine a license and registration was unconstitutional, but noting that this holding would not preclude the "[q]uestioning of all oncoming traffic at roadblock-type stops"). Nonetheless, because *McFayden* did consider evidence regarding both the siting of a roadblock and the plan pursuant to which it was conducted (without indicating the relative importance of that evidence as compared to the fact that all passing cars were stopped), *see* 865 F.2d at 1313, and because we are directing a remand on the roadblock issue in any event, it would be beneficial for the district court to make findings on this question as well.

C

For the foregoing reasons, we conclude that a remand is required for further evidentiary proceedings and factual findings pursuant to *United States v. Davis*. Indeed, that conclusion is so manifest that, although the defendant and the government would each prefer an outright victory, the briefs of both proposed such a remand as an alternative disposition. *See* Appellant's Br. 26;

Appellee's Br. 45. At oral argument, both repeated the view that a remand would be appropriate. *See* Oral Arg. Recording at 8:41, 31:38. Finally, having concluded that we must remand on the question of the lawfulness of the roadblock stop, we need not and do not reach Bowman's second argument, that the stop and frisk that followed the roadblock were unlawful under *Terry v. Ohio*.[2]

---

[2]The government contends that, even if the roadblock and/or the stop and frisk were unlawful, the denial of Bowman's motion to suppress should be upheld on the alternative ground that his physical resistance to the pat-down "purged the taint of any prior illegality." Appellee's Br. 37. The government also contends that the stop and frisk could be upheld on the ground that it was actually a search incident to arrest for a violation of the District's "open container" law. *See id.* at 46 n.31 (citing D.C. Code § 25-1001). The government's first contention was not raised below, and its second was not relied upon by the district court. Although it is within our authority to "affirm on grounds other than those presented and relied upon below," *United States v. Lawson*, 410 F.3d 735, 740 n.4 (2005), to do so in this case and at this stage would unfairly deprive petitioner of an adequate opportunity to respond. If the government chooses to pursue these contentions on remand, Bowman will have an opportunity to cross-examine witnesses and present evidence in opposition, and the district court will have an opportunity to decide the issues in the first instance.

19

IV

We affirm the district court's judgment that the magistrate judge improperly dismissed the complaint with prejudice, and therefore affirm the court's denial of Bowman's motion to dismiss the indictment. Because there are insufficient findings and evidence from which to assess the constitutionality of the roadblock, we remand the case to the district court for further proceedings consistent with this opinion.

*So ordered.*