# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 14, 2009　　　　Decided October 27, 2009

No. 05-5284

FRANK A. SKINNER,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE AND BUREAU OF
PRISONS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01376)

*Yvonne M. Williams*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With her on the brief was *Anthony F. Shelley*, appointed by the court.

*Frank A. Skinner*, pro se, filed the briefs for appellant.

*W. Mark Nebeker*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Lisa S. Goldfluss*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  A Bureau of Prisons hearing officer found prisoner Frank Skinner guilty of possessing drug paraphernalia and imposed sanctions that included the loss of 40 days of good-time credits.  Skinner sued the agency under the Privacy Act, 5 U.S.C. § 552a, seeking damages and amendment of his prison records.  The district court dismissed both claims on the ground that inmate records are exempt from the relevant provisions of the Act.  We affirm that reasoning with respect to Skinner's claim for amendment of his records.  We affirm the court's dismissal of Skinner's damages claim on the alternative ground that such a claim is not cognizable unless Skinner first secures relief through a writ of habeas corpus.

I

Frank Skinner is a federal prisoner who was housed at a Bureau of Prisons (BOP) facility in Atlanta, Georgia.  On November 27, 2001, staff at the facility searched Skinner's cell and locker and found a white powder that tested positive for cocaine.  *Skinner v. U.S. Dep't of Justice*, No. 04-1376, 2005 WL 1429255, at *1 (D.D.C. filed June 20, 2005).  BOP conducted an internal disciplinary hearing on January 28, 2002.  At the hearing, Skinner testified that the substance found in his locker was "[T]ide washing powder," which the hearing officer noted in his report.  *See* Discipline Hearing Officer Report (Feb. 5, 2002).  The officer, however, found that Skinner had actually possessed cocaine and imposed sanctions that included the loss

of 40 days of good-time credits,[1] 60 days of disciplinary segregation, the denial of visitation rights for a year, and the denial of commissary privileges for 180 days. BOP also referred the matter to the FBI, which declined to prosecute Skinner because the case would not "result in a criminal prosecution of greater penal consequences than which can be imposed by the BOP administrative remedies and actions." Letter from T. Jackson to G. Duncan (Feb. 12, 2002).

Skinner filed a number of administrative appeals within BOP, and on July 8, 2002, he also filed a Freedom of Information Act request with the FBI. The FBI informed Skinner that its records contained 18 pages that were responsive to his request. Because the documents had originated with BOP, the FBI referred the request to BOP, which released the documents to Skinner on August 15. One of the documents was the referral form BOP had sent to the FBI. The form contained a typed paragraph stating that chemical tests conducted by BOP indicated the white powder in Skinner's locker was cocaine. Below that paragraph was the following handwritten notation: "Actually laundry detergent." Referral of an Inmate Matter for Investigation (Dec. 12, 2001). There is no evidence in the record regarding who made the notation or what was meant by it. Skinner alleges that it reflects the results of an "independ[e]nt analysis" of the powder by the FBI, Pl.'s Mot. to Alter or Amend J. at 2, but also acknowledges that "[n]one of the suspected contraband was forwarded" to the FBI "for laboratory testing," Pl.'s Authentication or Identification to Compl. Doc. Ex. "A."

---

[1]Pursuant to 18 U.S.C. § 3624(b), a federal prisoner who complies with disciplinary regulations is eligible to receive credits -- known as good-time credits -- of up to 54 days per year toward the service of the prisoner's sentence.

On August 13, 2004, Skinner filed a pro se complaint in the United States District Court for the District of Columbia, alleging that the powder found in his locker was laundry detergent rather than cocaine, that the FBI referral form indicated as much, and that his BOP file was therefore inaccurate. He requested two remedies under the Privacy Act, 5 U.S.C. § 552a. First, he sought money damages for the punishments BOP had imposed on the basis of its finding that he possessed cocaine. Second, Skinner alleged that the "[a]genc[y] did not meet requirements of [the] Privacy Act by indicating that [the] inmate disputed information in his files." Compl. at 1. The district court treated this as a request for amendment of Skinner's records. *Skinner*, 2005 WL 1429255, at *1 & n.2.

BOP filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. BOP argued, first, that the complaint should be dismissed because BOP had exempted inmate records from the relevant provisions of the Privacy Act. Second, BOP maintained that Skinner's amendment claim was barred because he had failed to exhaust administrative remedies. Finally, in a footnote, BOP offered a "third and independent ground for dismissal." Citing *Razzoli v. Bureau of Prisons*, 230 F.3d 371 (D.C. Cir. 2000), the agency contended that Skinner's "claims could only be filed in the context of a *habeas corpus* action." Mem. in Support of Defs.' Mot. to Dismiss and/or for Summ. J. at 10 n.2. On June 20, 2005, the district court granted the motion to dismiss on the first ground urged by BOP: that the records were exempt.

On July 12, 2005, Skinner filed an appeal of that judgment, and on August 5 he filed a "Motion to Alter or Amend Judgment" with the district court, arguing that the disciplinary hearing he was challenging had taken place before BOP promulgated the exemption that the court applied to his damages claim. A panel of this court ordered the appeal held in abeyance

so that the district court could consider Skinner's motion, which the district court ultimately denied on March 31, 2008. On October 16, 2008, BOP filed a motion for summary affirmance in this court, which we denied. Thereafter, we appointed amicus curiae to present arguments in support of Skinner's position.

II

The Privacy Act imposes a set of substantive obligations on agencies that maintain systems of records, including the requirement that records used in making determinations about individuals be accurately maintained. *See* 5 U.S.C. § 552a(e)(5). The Act also provides civil remedies for its violation, including court-ordered amendment of records and money damages. The district court dismissed both Skinner's amendment and damages claims for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Our review is therefore de novo. *Razzoli*, 230 F.3d at 374. We address Skinner's claim for amendment in Part II.A and his claim for damages in Part II.B.

A

Skinner's suit seeks amendment of his inmate records, although the kind of amendment he seeks is not entirely clear. In places, Skinner's pleadings appear to request an amendment indicating that he possessed laundry detergent rather than cocaine. *See* Amicus Curiae Br. 11 (noting that Skinner filed administrative appeals "to have his records amended to accurately reflect that the substance found in his locker was laundry detergent"). In other places, the pleadings suggest that he merely wants his file to include the form containing the handwritten notation, "[a]ctually laundry detergent." *See* Amicus Curiae Reply Br. 5. Regardless of the nature of the amendment sought, this claim is quickly dispatched.

Privacy Act § 552a(e)(5) requires agencies to ensure that any records used in "making any determination about any individual" are "maintain[ed] . . . with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Section 552a(d) requires agencies to entertain requests for amendment of records that are not "accurate, relevant, timely, or complete." *Id.* § 552a(d)(2). If an agency rejects a request for amendment, the subject of the contested record can bring suit in federal court and obtain de novo consideration of whether amendment is warranted. *Id.* § 552a(g)(1)(A), (g)(2)(A). If the court so finds, it "may order the agency to amend the individual's record." *Id.* § 552a(g)(2)(A); *see generally Doe v. United States*, 821 F.2d 694, 697 & n.8 (D.C. Cir. 1987) (en banc).

But the Privacy Act also permits agencies to exempt certain of their systems of records from many of the obligations it imposes. 5 U.S.C. § 552a(j). In 1976, BOP exempted its Inmate Central Records System from § 552a(d)'s amendment provision. *See* 28 C.F.R. § 16.97(a); Exemption of Record Systems Under the Privacy Act, 41 Fed. Reg. 12,640, 12,650 (Mar. 26, 1976). As the district court found, as our precedents make clear, and as amicus acknowledged at oral argument, that exemption prevents us from ordering the amendment of an inmate's records. *See White v. U.S. Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997); Oral Arg. Recording at 2:48-3:12. Accordingly, we affirm the district court's dismissal of Skinner's amendment claim.

B

Skinner also seeks damages for the consequences of the alleged inaccuracy in his records.

As we have noted, Privacy Act § 552a(e)(5) requires agencies to ensure that all records "used by the agency in making any determination about any individual" are maintained "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Section 552a(g)(1)(C) permits an individual to bring a civil action against an agency if the agency "fails to maintain any record concerning [the] individual with such accuracy, relevance, timeliness, and completeness" and "consequently a determination is made which is adverse to the individual." *Id.* § 552a(g)(1)(C). If the court finds that the agency "acted in a manner which was intentional or willful," the United States is liable for "actual damages sustained by the individual as a result of" the agency's failure to properly maintain the record. *Id.* § 552a(g)(4); *see generally Doe*, 821 F.2d at 697 n.8. In sum, to make out a claim for damages, a "plaintiff must allege: inaccurate records, agency intent, proximate causation, and an 'adverse determination.'" *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); *see Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996).

The district court dismissed Skinner's damages claim on the same ground upon which it dismissed his amendment claim: that BOP had exempted inmate records from the provisions of the Privacy Act. But while BOP's 1976 regulation exempted prison records from Privacy Act § 552a(d), the provision regarding amendment of inaccurate records, that regulation did not exempt BOP records from § 552a(e)(5), the provision creating the duty to accurately maintain records "used . . . in making any determination." *See Deters*, 85 F.3d at 658 n.2; *Phillips v. Hawk*, No. 98-5513, 1999 WL 325487, at *1 (D.C. Cir. Apr. 14, 1999). And as we explained in *Sellers v. Bureau of Prisons*, the damages provision of Privacy Act § 552a(g) provides a remedy for violations of § 552a(e)(5). 959 F.2d 307, 310 (D.C. Cir.

1992); *see Deters*, 85 F.3d at 657.

On August 9, 2002, BOP did promulgate a regulation exempting its records from § 552a(e)(5). *See* 28 C.F.R. § 16.97(j); Privacy Act of 1974: Implementation, 67 Fed. Reg. 51,754 (Aug. 9, 2002). Skinner's lawsuit was filed after that date, but his complaint is premised on a BOP disciplinary determination that took place seven months earlier. As a consequence, Skinner contends that it would be impermissibly retroactive to apply the § 552a(e)(5) exemption to his lawsuit. We need not resolve this issue, however, because there is another ground for dismissal that is clearly established by a series of decisions of both the Supreme Court and this circuit. Under those precedents, Skinner's civil damages claim is barred unless and until he successfully challenges the disciplinary hearing on which it is based through an action in habeas corpus.

The series of cases begins with *Preiser v. Rodriguez*, in which the Supreme Court held that a state prisoner cannot sue prison authorities under 42 U.S.C. § 1983[2] for injunctive relief to compel restoration of good-time credits because victory in such a suit would shorten the prisoner's sentence. 411 U.S. 475 (1973). As the Court explained, when a "state prisoner is

---

[2]Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus" even if his claim comes within the literal terms of § 1983. *Id.* at 500; *see id.* at 489-90. In *Heck v. Humphrey*, the Court extended this rule to a § 1983 suit seeking money damages -- but neither an injunction nor release -- for an unconstitutional conviction. 512 U.S. 477, 479, 487 (1994). *Heck* instructed courts to dismiss such a damages action if success would "necessarily imply the invalidity of [the] conviction or sentence[,] . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" -- for example, by reversal on direct appeal or issuance of a writ of habeas corpus. *Id.* at 487.

In *Edwards v. Balisok*, the Court applied *Preiser* and *Heck* to a case analogous to Skinner's: a state prisoner's § 1983 challenge to the procedures employed in a disciplinary proceeding that resulted in revocation of his good-time credits. 520 U.S. 641 (1997). The prisoner sought neither restoration of those credits nor damages for their loss; he sought only damages for violations of procedural due process at his hearing. *Id.* at 645. Nonetheless, the Court concluded that his action was barred because "[t]he principal procedural defect complained of . . . would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," and would therefore shorten his sentence "absent a new hearing." *Id.* at 646-47. The prisoner had alleged that his hearing officer, motivated by "deceit and bias," *id.* at 647, had "concealed exculpatory witness statements" and otherwise denied him the opportunity to defend himself, *id.* at 644, 646. If those allegations were proven, the Court said, the disciplinary decision could not stand. *See id.* at 647. Accordingly, "'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'"

*Id.* at 643 (quoting *Heck*, 512 U.S. at 487).

In *Muhammad v. Close*, the Court summarized this line of cases as follows. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ." 540 U.S. 749, 750 (2004). If success in a "damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Id.* at 751.

The *Preiser-Heck-Balisok* trilogy involved suits by state prisoners under 42 U.S.C. § 1983. In *Razzoli v. Bureau of Prisons*, this court applied *Balisok* to a federal prisoner's claim for damages under the Privacy Act's accuracy provisions. Prison officials had found cocaine and a razor blade in Razzoli's cell and imposed "a sanction that included the loss of 60 days statutory good time credit." 230 F.3d at 373. Razzoli alleged "that the BOP staged the incident." *Id.* at 373. "The theory of Razzoli's Privacy Act claim," we explained, was "that BOP and the Parole Commission violated 5 U.S.C. § 552a(e)(5) by maintaining in their files and using a false record, the report of the drug possession incident, even though they knew it to be false." *Id.* at 374. We concluded that this claim "clearly runs afoul of *Balisok*" because, "[i]f BOP knowingly preserved and acted upon a totally invented record of drug possession, plainly the recision of good time would have to be overturned, thus accelerating Razzoli's release." *Id.*[3] Accordingly, we affirmed the dismissal of Razzoli's Privacy Act claim, instructing that he

---

[3]Although we noted that there was "the possibility of renewed revocation of the good time credit in a new [untainted] hearing," that possibility did not change the analysis. *Razzoli*, 230 F.3d at 375; *see Balisok*, 520 U.S. at 646-47.

could refile it only if he were "successful in overturning [BOP's] actions through a petition for habeas." *Id.* at 376.[4]

Skinner's claim for damages under the Privacy Act is virtually indistinguishable from the claims barred in *Balisok* and *Razzoli*. In order to obtain damages, Skinner must allege that "the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). And he does, contending that BOP "willfully relied upon incomplete and inaccurate records to discipline him unfairly for allegedly possessing cocaine." Amicus Curiae Br. 3; *see id.* at 9-10; Compl. at 3-4. In particular, Skinner asserts that "BOP fabricated its drug test results" and "purposely excluded the [allegedly exculpatory] Referral Form from [his] records in order to retaliate against or otherwise punish him" for an assault complaint he had filed against a prison guard. Amicus Curiae Br. 28-29; *see id.* at 28 (citing Compl. at 2-3); Pl.'s Mot. to Alter or Amend J., Ex. A (Regional Administrative Remedy Appeal). But "the due process requirements for a prison disciplinary proceeding are . . . not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Balisok*, 520 U.S. at 647. If Skinner were to succeed in demonstrating that BOP intentionally or willfully maintained and acted upon a false record of drug possession, "plainly the recision of good time would have to be overturned, thus accelerating [Skinner's] release." *Razzoli*, 230 F.3d at 374. As a consequence, he must first proceed in habeas, notwithstanding that in this case he seeks only damages and not restoration of good time. *Id.* at 372-73; *cf. Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (holding

---

[4]*See White*, 148 F.3d at 1125 (holding that a prisoner's claim for damages under the Privacy Act, alleging that his presentence report contained inaccuracies requiring him to serve more time, was not cognizable "unless the sentence has been invalidated in a prior proceeding").

"that a state prisoner's § 1983 action is barred (absent prior invalidation) -- *no matter the relief sought* (damages or equitable relief) . . . -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration" (first emphasis added)).

Skinner contends that, even if his claim for damages for loss of good time must first proceed in habeas, the same is not true of his claims for "damages for other, separate disciplinary harms." Amicus Curiae Reply Br. 27. But although those other punishments -- namely, disciplinary segregation and the loss of visitation rights and commissary privileges -- did not affect the length of Skinner's incarceration, they are not "separate" from the punishment that did. As Skinner's complaint avers, all of his punishments resulted from the same "Incorrect Information" in his file -- and from the same finding of guilt at the same hearing on the basis of that information. Compl. at 1.[5] Amicus conceded as much at oral argument.[6] Hence, because recovery for the "other, separate disciplinary harms" depends on overturning the adverse determination that also led to his loss of good-time credits, if Skinner were to win damages for the former, he would necessarily have demonstrated the invalidity of the latter.

---

[5]*See* Compl. at 3 (complaining of the "adverse effect in record determining custody, classification, job, quarter assignment and the los[s] of forty (40) days good conduct credits"); Amicus Curiae Br. 7 (stating that, "[a]s a result" of the hearing officer's determination that Skinner was guilty, he "was denied visitation for a year, denied commissary privileges for 180 days, his good time credit was discounted 40 days, and he was placed in segregation or solitary confinement for 60 days").

[6]*See* Oral Arg. Recording at 6:22-50 (agreeing that the good time, segregation, and commissary sanctions were all based on the same finding that Skinner possessed cocaine rather than detergent).

Amicus insists that it is nonetheless possible to distinguish the two types of discipline. In amicus' view, we need not determine that the white powder was detergent rather than cocaine to vindicate Skinner's damages claim; we need only find that the records at Skinner's hearing were inaccurate or incomplete because they omitted the referral form. Had the hearing officer seen the form, amicus continues, that might have been enough to keep him from ordering Skinner held in segregation, even if not enough to prevent him from revoking Skinner's good-time credits. Amicus Curiae Reply Br. 28. But even on this theory, to obtain damages for being held in segregation Skinner still must show that BOP *intentionally or willfully* kept the allegedly exculpatory FBI form out of his disciplinary hearing. *See* 5 U.S.C. § 552a(g)(4); Amicus Curiae Reply Br. 3 (arguing that Skinner's "prison segregation [was] based on willfully inaccurate records"). And as we have explained above, if he were to succeed in making such a showing, that would "necessarily imply the invalidity of the deprivation of his good-time credits" as well, *Balisok*, 520 U.S. at 646-47. *See Razzoli,* 230 F.3d at 374.[7]

Finally, amicus urges us not to apply the habeas-channeling rule here because the district court did not rely on it. Instead, the court rested dismissal of Skinner's complaint on BOP's

---

[7]Although *Razzoli* recognized that a state prisoner is confined to habeas only if his successful claim would "necessarily imply" a shorter period of confinement, 230 F.3d at 375 (internal quotation marks omitted), it held that habeas is exclusive for a federal prisoner "even when a non-habeas claim would have a merely probabilistic impact on the duration of custody," *id*. at 373. *See Davis v. Bureau of Prisons*, No. 08-5053, 2009 WL 1791872, at *1 (D.C. Cir. June 5, 2009). This aspect of *Razzoli* is not relevant here because -- as discussed in the text -- Skinner's success in a damages action would necessarily imply the invalidity of the revocation of his good-time credits.

exemption of its records from the Privacy Act. But this court can "affirm a correct decision even if on different grounds than those assigned in the decision on review," a principle "particularly applicable when reviewing a dismissal for failure to state a claim, [which is] a pure question of law which we review *de novo*." *Razzoli*, 230 F.3d at 376 (internal quotation marks and citations omitted). Amicus does not dispute our authority in this regard, but correctly notes that we generally do not decide cases on grounds that were not raised in the district court, absent exceptional circumstances. *See Kurke v. Oscar Gruss and Son, Inc.*, 454 F.3d 350, 358 & n.8 (D.C. Cir. 2006). Indeed -- as amicus also correctly points out -- the Supreme Court held in *Muhammad v. Close* that the government had waived a habeas exclusivity argument by failing to raise it below. 540 U.S. at 755.

But here the government *did* raise the habeas argument in the district court, identifying it as a "third and independent ground for dismissal." Mem. in Support of Defs.' Mot. to Dismiss and/or for Summ. J. at 10 n.2. Although the government raised the point only in a footnote, that footnote cited the controlling precedent -- *Razzoli* -- and expressly "reserve[d] the right to brief [the habeas] point at some later stage of the litigation if such stage should come to pass." *Id.* That later stage never came to pass in the district court because the court ruled for the government on the basis of the exemption. But that stage has come in this court, and both the government and Skinner (and amicus) have had a full opportunity to brief the issue. Moreover, this case is not like *Muhammad*, where the government's habeas argument depended on a disputed question of fact -- whether the plaintiff had actually lost any good-time credits. 540 U.S. at 754-55. Rather, BOP's argument here raises only legal questions that we decide de novo. Thus, there is no unfairness in our affirming on this alternative ground. *Cf. United States v. Bowman*, 496 F.3d 685, 695 n.2 (D.C. Cir.

2007) (noting that an appellate court may not affirm on a ground not relied upon by the district court if doing so would "unfairly deprive [the plaintiff] of an adequate opportunity to respond").

## III

We affirm the district court's dismissal of Skinner's claim for amendment of his records on the ground that those records are exempt from the amendment provision of the Privacy Act. We affirm the court's dismissal of Skinner's damages claim because such a claim is not cognizable unless Skinner first secures relief through a writ of habeas corpus.

*So ordered.*